IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRICKSTOP CORPORATION, | ) | Case Number: 1:08-cv-02690 |
| | ) | |
| Plaintiff, | ) | Assigned Judge: Gettleman |
| | ) | |
| v. | ) | Designated |
| | ) | Magistrate Judge: Cole |
| VALLEY VIEW INDUSTRIES, H.C., Inc., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S SUGGESTIONS IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

HOVEY WILLIAMS LLP
Scott R. Brown (Admitted *Pro Hac Vice*)
Matthew B. Walters (Admitted *Pro Hac Vice*)
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel.    913-647-9050
Fax    913-647-9057
srb@hoveywilliams.com
mbw@hoveywilliams.com

Mark Hellmann
Hellmann Law Group
2 North LaSalle Street, Suite 1808
Chicago, Illinois 60602
Tel.    312-580-9070
Fax    847-556-0031
mark@hellmann.com

ATTORNEYS FOR PLAINTIFF
BRICKSTOP CORPORATION

# TABLE OF CONTENTS

I.   Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.   BrickStop's Product Configuration Is Not Functional And Is Entitled To Trade Dress Protection.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            1.   Protection of BrickStop's Trade Dress Would Not Put Competitors at a Non-Reputational Competitive Disadvantage by Removing From the Public Domain Features Essential to Paver Edging Products or That Affect the Cost or Quality of Such Products.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.   Even Were Valley View's Improper Hindsight Approach Correct, BrickStop's Trade Dress Is Not Functional.. . . . . . . . . . . . . . . . . . . . . . . 4

      B.   BrickStop Has Established the Existence of Secondary Meaning By Virtue of Unrebutted Evidence of Substantial and Exclusive Use of the Trade Dress Coupled With Valley View's Intentional Copying and the Resulting Instances of Actual Confusion of Distributors and Contractors.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.   BrickStop Does Not Rely On Its Distinctive Design to Establish Secondary Meaning.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.   BrickStop's Subtantial Sales, Advertising, and Continuous and Exclusive Use Establish Secondary Meaning in the Trade Dress.. . . . . . . . . . . . . 9

            3.   Valley View's Copying Alone Establishes Secondary Meaning in the B.E.A.S.T. Trade Dress.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.   The Evidence of Actual Confusion Demonstrates Secondary Meaning. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.   There Is A Strong Likelihood of Confusion if Valley View Is Not Enjoined From Selling Its "Knock-off" Product.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.   The Identical Area and Manner of Concurrent Use Favors a Finding of Likelihood of Confusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            2.   The Incidences of Actual Confusion to Date Strongly Counsel for a Finding of Likelihood of Confusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            3.   The Relatively Inexpensive Nature of the Product and Reliance on Shape by Contractors Demonstrates the Degree of Customer Care in the Purchase Favors Finding Likelihood of Confusion... . . . . . . . . . . . . . . . . . . . . . . 13

4. BrickStop's Strong Trade Dress Indicates Confusion is Likely... . . . . . 14

D. Irreparable Harm, Balancing the Harms, and the Public Interest.. . . . . . . . . . . . 14

III. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## Statutes & Rules

Lanham Act .................................................................. 10

## Cases

*Best Lock Corp. v. Schlage Lock Co.*,
    413 F.2d 1195 (C.C.P.A. 1969). .................................................. 3

*CAE, Inc. v. Clean Air Eng'g., Inc.*,
    267 F.3d 660 (7th Cir. 2001). ............................................. 11, 12, 14

*Chamberlain Group, Inc. v. Lear Corp.*,
    No. 05-cv-3449, 2007 WL 1017741 (N.D. Ill. Mar. 30, 2007). ........................ 15

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
    94 F.3d 376 (7th Cir. 1996). .................................................... 13

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
    456 U.S. 844 (1982). ........................................................... 2

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
    No. 02-cv-1823, 2002 WL 31870549 (N.D. Ill. Dec. 23, 2002).. ...................... 12

*Logan Graphic Prods, Inc. v. Textus USA, Inc.*,
    No. 02-cv-1823, 2003 WL 21011746 (N.D. Ill. May 5, 2003).. ........................ 4

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
    514 U.S. 159 (1995). ......................................................... 1, 2

*Sara Lee Corp. v. Am. Leather Prods., Inc.*,
    No. 97-cv-4158, 1998 WL 433764 (N.D.Ill. July 29, 1998). ........................ 9, 11

*Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*,
    349 F.3d 601 (9th Cir. 2003). .................................................. 7, 8

*Thomas & Betts Corp. v. Panduit Corp.*,
    138 F.3d 277 (7th Cir. 1998) (*Thomas II*). ............................. 3, 4, 9, 10, 13

*Thomas B. Betts Corp. v. Panduit Corp.*,
    65 F.3d 654 (7th Cir., 1995) (*Thomas I*).. ....................................... 9

*Tools USA and Equip. Co. v. Champ. Frame Straightening Equip. Inc.*,
    87 F.3d 654 (4th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Traffix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4, 6

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Union Carbide Corp. v. Ever-Ready Inc.*,
    531 F.2d 366 (7th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Versa Prods Co. v. Bifold Co. Mfg. Ltd.*,
    50 F.3d 189 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*,
    259 F.3d 25 (1st Cir., 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    Introduction

Valley View wanted a new paver edge in its product line up. ███████████
████████████████████████████████████████████████████, and encouraged by a
significant potential customer who wanted Valley View to copy the B.E.A.S.T., Valley View chose the
easy course of action, copy rather than innovate and develop its own brand.  Valley View's principal
defenses are (1) everyone else copies and (2) the distinctively shaped B.E.A.S.T. is actually all
functionally required.  The first is no defense, and the second relies on a misreading of the law and
ignores the nature of the freedom of design made possible by injection molding.

While Valley View complains that BrickStop seeks a "super patent," in fact just the opposite is
true.  BrickStop is one amongst many entries in the paver edging market, expects and accepts
competition, and has never sought to exclude others from the market.  BrickStop only seeks to prevent
Valley View from trading off of the good will it has developed in its very distinctive foot shape; a shape
it has used as a logo or crest for years, and that it has developed into a successful brand through hard
work, long investment, and persistence.  BrickStop welcomes competition, but should not have to
compete against its own product.

BrickStop has exclusively marketed and sold its distinctive design for seven years establishing
*prima facie* evidence of secondary meaning.  Valley View has appropriated the design to sell through
identical channels of trade, using identical means of promotion, to the same customers and potential
customers.  With repeated instances of actual confusion now coming to light, BrickStop will be
irreparably harmed if Valley View is allowed to continue to sell its potentially inferior knock-off
confusing the market and causing damage to BrickStop's brand.

## II.    Argument

### A.    BrickStop's Product Configuration Is Not Functional And Is Entitled To Trade Dress Protection.

#### 1.    *Protection of BrickStop's Trade Dress Would Not Put Competitors at a Non-Reputational Competitive Disadvantage by Removing From the Public Domain Features Essential to Paver Edging Products or That Affect the Cost or Quality of Such Products.*

The touchstone of the non-functionality requirement as established by the Surpeme Court is
whether allowing the asserted trade dress protection would put a competitor at a significant
non-reputationally related disadvantage.  Under this standard a proposed trade dress is only functional
if its protection would "put a competitor at a significant disadvantage because the feature is 'essential
to the use or purpose of the article' or 'affects its cost or quality.'" *Qualitex Co. v. Jacobson Prods. Co.,*

*Inc.*, 514 U.S. 159, 169 (1995) (quoting *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 850 n.10 (1982)).  The Supreme Court reaffirmed this standard in *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001).  But BrickStop does not seek to exclusively "control a useful product feature" in the paver restraint industry such as by denying all others the right to use a foot and spacer design.  *See Qualitex* , 514 U.S. at 164.

The "use or purpose" of the products in question is securing pavers against lateral movement after they have been laid over a properly prepared base.  (D.N. 13, Frieberg Dec., ¶ 4; Expert Report of Jordan I. Rotheiser ("Rotheiser"), ¶ 8.)  Requiring that competitors not use BrickStop's exact shape of foot and spacer design takes nothing out of the public domain that is "essential to the use or purpose of the article' or 'affects its cost or quality."  There are a myriad of possible designs in the market that achieve the same function.  Indeed, BrickStop's expert Mr. Rotheiser has proposed a design in his report that achieves every function suggested by Valley View as pertaining to these products with a shape that is starkly different from BrickStop's trade dress.[1]  (*See* Appendix A; Rotheiser ¶ 13, Ex. D-F.)  Moreover, Valley View's President admitted both that injection molding allows a designer to be more creative in shapes that are employed than extrusion and that had Valley View started from a blank slate he could not say Valley View would have come up with the BrickStop design.  (Declaration of Matthew B. Walters in Support of Plaintiff's Suggestions in Support of its Motion for Preliminary Injunction ("Walters Dec."), Ex. J; Rynberk Dep., 191:12-18 and 175:16 - 176:6.)  He had to admit to these things because of the freedom of design injection molding allows and because the particular shape of BrickStop's foot is not functionally required to achieve a paver edging.  (Rotheiser, ¶¶ 9, 13-31.)

Having copied BrickStop's overall trade dress, Valley View seeks to prevail on functionality by, after the fact, dissecting the design and ascribing functionality to each individual piece.  The core of Valley View's functionality argument is a misreading of the *Traffix* decision.  In *Traffix*, the plaintiff asserted that its trade dress in a temporary road construction sign used along highways was having (1) a base with (2) four legs, (3) two springs connecting the base to a sign, and (4) a sign.  The alleged distinctive feature was having two springs.  The springs functioned to allow the sign to resist the force of wind without toppling over.  The plaintiff had an expired utility patent covering exactly these features.  The Supreme Court found that because the asserted trade dress was the broad coverage of the

---

[1]Valley View asserts that BrickStop has not clearly identified its trade dress.  But Valley View analyzes the case using the trade dress exactly as it was identified in BrickStop's opening brief:  the combination top down view of the particular foot structure and spacer between the feet. (*See* D.N. 13, pp. 4-5.)

features that were necessary to make the article work, the very things claimed in the expired patent, the proposed trade dress was indeed functional. If BrickStop were asserting that its trade dress was to have a wall for holding bricks, a plurality of feet, spacers connecting the feet, and joiners to connect pieces of the system together, *Traffix* would be directly controlling.

But that is not the case. Rather, BrickStop's trade dress resides in the particular shape of the foot structure and spacers between the feet, and nothing else. BrickStop does not here allege that Valley View cannot sell a paver edging with feet and spacers, just these particular feet and spacers. BrickStop does not attempt to take anything out of the "public domain" that would put Valley View at any "non-reputational competitive disadvantage."

Indeed, Valley View's approach to the analysis of functionality is directly contrary to the law. A trade dress may be comprised of functional features arranged in a unique fashion that then develops product configuration trade dress protection. To attempt to dissect those features and ascribe function to them individually is improper:

> This tactic ignores the fact that the critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress as a whole is functional. *Tools USA and Equip. Co. v. Champ. Frame Straightening Equip. Inc.*, 87 F.3d 654, 658 (4th Cir. 1996).

Thus, as described below, once the general outline of BrickStop's foot was created, there may have been material added to support certain features or remove it from the mold. But, if the general non-functionally required outline were not selected, the subsidiary features also would not have been selected. This is why the trade dress must be viewed as a whole. Once a shape is selected in a product configuration, one can come in later, as Valley View has done, and say it has function. But if the particular shape was not required or particularly advantageous from a functional standpoint in the first instance, a different shape could be employed and would have that same function. Thus, the Seventh Circuit has stated, "some articles, made in a purely arbitrary configuration (e.g., the wine bottle considered in *Mogen David*) ... may *perform* a function, holding wine, which could equally well be served by containers of many other shapes, and in such circumstances the incidental function should not by itself preclude trademark registrability if the other conditions precedent are present." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 288 (7th Cir. 1998) (*Thomas II*) (quoting *Best Lock Corp. v. Schlage Lock Co.*, 413 F.2d 1195, 1199 (C.C.P.A. 1969)). "The fact that the feature at issue serves some function is not enough." *Thomas II*, 138 F.3d at 297. Thus, a designer may select a particular curve to the leg of a chair. It is irrelevant to prove, as Valley View by analogy has attempted, that the curved leg performs a function for that chair. Obviously, if you remove the leg the chair will not

3

function.  The question is whether a different curve or straight legs would equally perform the function thereby demonstrating the curve was not functionally required and removal of the feature from the public domain would not disadvantage competitors from a functional viewpoint.

Valley View's reliance on *Traffix* for the argument that alternative designs are irrelevant in this case is simply wrong.  In *Traffix* the Court decided what evidentiary weight to accord an expired utility patent in assessing functionality, not the relevance of alternative designs in analyzing functionality. *Traffix*, 532 U.S. at 29.  To be sure, in *Traffix*, alternative designs were irrelevant because the "dual-spring design is not an arbitrary flourish in the configuration of the MDI product; *it is the reason the device works*."  *Id*. at 33 (emphasis added).  Thus, the claimed invention in the expired patent conclusively established the functionality of the claimed distinctive feature of the trade dress.  *Id*. at 34. This, however, is not the standard applied in the Seventh Circuit when a feature is functional but also has non-functional shape that may act as a source identifier.  *Thomas II*, 138 F.3d at 297.

Two years after *Traffix*, this Court distinguished *Traffix* with exactly the same reasoning stating "unlike the case in *Traffix*, in our case functionality has not been established by the existence of expired patents.  When making an initial determination about functionality, as we do here, it is appropriate to consider alternatives in the marketplace."  *Logan Graphic Prods, Inc. v. Textus USA, Inc.*, No. 02-cv-1823, 2003 WL 21011746, at *4 (N.D. Ill. May 5, 2003).  Therefore it is appropriate for this Court to examine industry alternatives in analyzing whether BrickStop's particular footing structure shape is functional.  Nothing about BrickStop's arbitrary curvature, fill regions, empty triangular space, or x-patterned spacers are "the reason the device works" at holding bricks and pavers from shifting. Other foot and spacer shapes would work equally as well as evidenced by the legion of alternatives that exist as well as the design proffered by Mr. Rotheiser.  BrickStop only "seeks to protect arbitrary, incidental, [and] ornamental aspects" of its particular paver restraint system.

### 2. Even Were Valley View's Improper Hindsight Approach Correct, BrickStop's Trade Dress Is Not Functional.

Valley View's detailed functionality analysis suffers from two fatal flaws.  First it identifies functions of individual features that bear no relationship to the use of the parts in the real world application of restraining bricks.  Rather, Valley View merely asserts that certain features perform certain functions without regard to the functional requirements of paver edging.  In this respect, Valley View seeks for the Court to deny trade dress protection because some *irrelevant but identifiable* function can be found.  Second, Valley View asserts some functionality to the product that may be relevant to the real world application, but that is not aided by the shape of the trade dress.  Neither type of argument

can preclude trade dress protection.

Valley View begins its functionality argument by focusing on six features touted from BrickStop's advertising that it asserts demonstrate functionality of the design:

- **"1-2. Has 'One Piece That Does Both [1] Straight Lines and [2] Curves.'"**

The one piece B.E.A.S.T. can indeed be used in straight line applications or curved applications.

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████. But the particular shape of the spacers do not intrinsically contribute to this function. This is demonstrated by the fact that the B.E.A.S.T. was originally sold with very different spacer structure indeed, a single cross rib. (Walters Dec., Ex. I, Kurtz Dep., 84:7-85:8.) The changed spacer that now forms part of the design did not change this functionality. In short, having material of some shape in between the feet contributes to this claimed function, but having the identical spacer that is part of the look of the B.E.A.S.T., is neither required, less expensive, nor more efficacious by any measure. ████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████Valley View ignored this sensible request presumably in favor of not changing the look of the part.

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████This is because the edging is installed over a hard and level base material so twisting forces in the direction claimed by Valley View are not exerted on the part.

█████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████Again, Valley View entirely fails to relate the asserted functionality to the actual real world requirements of the application. ██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. There are several single piece systems that may be used in straights and curves that look nothing like the B.E.A.S.T. (D.N. 13, Frieberg Dec., Exs. E, G, I.)

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████. Once again, Valley View fundamentally fails to match its alleged function to the real world application. The minimum recommended radius of curvature for paver installations is three feet or 36 inches. On some occasions installers will use two feet or a 24 inch radius. If the B.E.A.S.T. were designed with feet of the same length as it presently has, but no taper so that the they formed a simple rectangular shape, they would be capable of being bent down to a 9 inch radius, less than 1/3 of recommended and less than ½ of the minimum radius ever used. (Rotheiser, ¶ 23, Ex. J.) The so called function of the taper has no application in the real world and does not contribute to the functionality of the part.

Moreover, even were the evidence contrary and the taper contributed a real world function, the B.E.A.S.T. has a unique double angle in its taper. Neither Valley View nor its expert have ever ascribed a function to the double angle. The double angle is a classic artistic flair, like the curve in the leg of a chair, and tracks exactly the example of a feature that the Supreme Court in *Traffix* said may be protectible. In sum, protection of BrickStop's trade dress would not remove single piece systems capable of holding straight lines and curves or being bent either to the inside or outside in installation from the public domain, only its distinctive look would be protected.

- **"3. 'Uses a Lattice Nailing Pattern for Strength and Stability.'"**

Lattice nailing is the process of nailing down the part with alternating distances from the wall on successive feet. This affect can be created by having holes that are varying distances from the paver wall. But neither the particular location of the holes in the B.E.A.S.T., nor the structure used to support the holes as utilized in the B.E.A.S.T., are functionally required. Indeed, the design proposed by Mr. Rotheiser shows that lattice nailing can be accomplished with far less material and stronger support with his proposed alternative. Protection of BrickStop's trade dress would not remove lattice nailing from the public domain, only its distinctive look that incidentally achieves lattice nailing would be protected.

- **"4. 'Has Structural Rib Re-enforcement SRR™ for perfect straight lines.'"**

Valley View makes little of this touted functionality because it contributes little to the look of the trade dress. ███████████████████████████████████████████████████████████████ ██████████████████. This advertising phrase was actually developed for the original single cross rib spacer design, and merely survived in BrickStop's advertising after the part was changed. (Kurtz Dep., 84:17-23; Walters Dec., Ex. H, Frieberg Dep. 248:12-249:24.) Thus, that the spacer shape can change without affecting this claimed functionality is empirically proven and the functionality asserted by Valley View does not affect in any way the top down or plan view look of the spacers.

- **"5. 'Has a 'Stable Sure-gripping Footprint SSF™ for stability.'"**

Valley View's ruminations about what this phrase might mean cannot convert the entire distinctive shape of BrickStop's foot structure into a functional requirement in the industry.  As explained by Mr. Kurtz in his deposition, paver installation begins with the creation of a hard base, highly compacted with screening placed over it so that it is almost as hard as cement.  The foot of the paver edging is placed onto this hard base and nailed into place with typically eight inch nails.  It is the nail that causes gripping. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Thus, protection of BrickStop's trade dress would not remove "openwork feet" from the public domain, only its distinctive look that also purportedly achieves this function would be protected.

- **"6. Has a 'reverse application.'"**

The first part of Valley View's argument with respect to "reverse application" is puzzling indeed. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. This feature missing from the trade dress is irrelevant to the dispute.  The second portion of Valley View's argument is both confusing and entirely unsupported in the record.  ████████████████████████████

████████████████████████████████████████████████████. This is simply unsupported in logic, and no one has so testified. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

In sum, Valley View's reliance on BrickStop's advertising to demonstrate functionality utterly fails to relate the claimed advertising to the shape of the trade dress configuration or asserts purported functions that have no relevance to the application for which the product will be used.  This case is unlike *Talking Rain*, relied on by Valley View, where the Ninth Circuit found that the plaintiff did not dispute the defendant's contentions that the trade dress at issue resulted in a utilitarian advantage. *Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 604 (9th Cir. 2003).  In *Talking Rain* the essence of the plaintiff's claimed distinctiveness in its trade dress was a functional grip, which "appear to be common in the beverage industry [and] tends to corroborate SoBe's assertion that

the grip area is indeed functional and not arbitrary." *Id.* at 605.  In contrast, BrickStop's unprecedented design yields no utilitarian advantage not equally attainable with design alternatives, acts as a source identifier, and is, in fact, *more costly* to manufacture.  (Rotheiser, ¶¶ 10-13.)

Valley View then focuses on a few miscellaneous features to which it attributes functionality.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████.  Valley View is not saying, and could not say, that the x-shaped legs are an optimum design, or that a different shape would not work as well, or even that removal of the shape would prevent manufacture of the part if it were taken from the public domain.  Indeed, empirically this cannot be true because the part was manufactured for several years without this shape to the spacer.  (Rotheiser, ¶ 21.)

**B.**   **BrickStop Has Established the Existence of Secondary Meaning By Virtue of Unrebutted Evidence of Substantial and Exclusive Use of the Trade Dress Coupled With Valley View's Intentional Copying and the Resulting Instances of Actual Confusion of Distributors and Contractors.**

**1.**   ***BrickStop Does Not Rely On Its Distinctive Design to Establish Secondary Meaning.***

Valley View spends a great deal of time addressing a straw argument of its own, that product configuration trade dress is not entitled to be considered inherently distinctive to establish secondary meaning.  BrickStop agrees and never asserted that its distinctive design was entitled to such treatment.  Rather, BrickStop relies on the unrebutted evidence of its substantial and exclusive seven year use of

8

the trade dress, which entitles it to a presumption of secondary meaning, coupled with the strong inference that arises from Valley View's intentional copying and the resulting instances of actual confusion of distributors and contractors discussed more fully below.

### 2. BrickStop's Subtantial Sales, Advertising, and Continuous and Exclusive Use Establish Secondary Meaning in the Trade Dress.

BrickStop's exclusive use of its signature design as featured in its substantial advertising and sales establishes that BrickStop's design has acquired secondary meaning. Secondary meaning is established by longstanding, continuous and exclusive use, coupled with substantial sales and advertising. *Sara Lee Corp. v. Am. Leather Prods., Inc.*, No. 97-cv-4158, 1998 WL 433764, at *13 (N.D.Ill. July 29, 1998). Valley View does not seriously contest any of the following: That BrickStop has sold approximately 34 million feet of the product in the United States; that BrickStop's sales of the product are exclusive;[2] that BrickStop has continuously advertised and promoted the BrickStop design as a source designator from its introduction in 2001 to the present including distribution of 25,000 brochures, 40,000 catalogs and over 1,000 T-shirts a year and maintenance of a website that all prominently display the BrickStop design to designate a source; and that BrickStop has distributed thousands of samples to potential customers in boxes with the B.E.A.S.T. logo prominently displayed on the outside. Indeed, BrickStop's geographic penetration of the market across the United States is impressive. (Supplemental Declaration of David Frieberg ("Supp. Frieberg Dec."), Ex. V.) This exclusive use has caused BrickStop's products featuring the signature design to become recognized by contractors and installers, the relevant consumer, as a source designation for BrickStop. (D.N. 13, Train Dec., ¶¶ 3-4.)

Valley View asserts that BrickStop's extensive advertising that displays the B.E.A.S.T. product configuration as a logo should not be considered because it is not "look for" advertising. Valley View cites *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25 (1st Cir., 2001), which itself cites *Thomas B. Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir., 1995) (*Thomas I*) for the proposition that only advertising that directs a consumer's attention to a particular aspect of the product is probative. But the Seventh Circuit clarified *Thomas I* when it stated "While we utilized as an example of such advertising the phrase 'look for the oval head,' we did not establish that such explicit direction was necessary." *Thomas II*, 138 F.3d at 292. Rather, any advertising that prominently features the trade dress can assist in determining whether secondary meaning exists. *Id*. For "there is no hard-and-fast

---

[2] Valley View has submitted evidence from Mr. Bertucci that others sell a similar product. As explained by Mr. Frieberg, each of those instances identified by Mr. Bertucci are merely resellers of BrickStop's B.E.A.S.T., not a similarly shaped competitive product. (Supp. Frieberg Dec., ¶¶ 24-25, Walters Dec., Ex. L.)

rule establishing that the shape of a product must be specifically pointed out in advertising in order for that advertising to be considered as evidence of secondary meaning."  *Id.*

Even were the Court to entirely discount BrickStop's advertising efforts, BrickStop's seven years of exclusive continuous use establishes *prima facie* evidence that BrickStop's signature design has acquired secondary meaning.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).").  Under 15 U.S.C. § 1052(f) [§ 2], proof of substantially exclusive and continuous use for a period of five years is *prima facie* evidence of distinctiveness and therefore secondary meaning.

### 3. *Valley View's Copying Alone Establishes Secondary Meaning in the B.E.A.S.T. Trade Dress.*

Rather than fight the obvious, that it copied BrickStop's design, Valley View retreats to the novel defense that everyone copies and therefore its expected by the industry and they should be excused for their actions.  The kernel of truth in Valley View's assertion is that the prior existence of generic looking designs did lead to some copying in the industry.  But it was exactly this state of affairs that led BrickStop to create its signature design.  BrickStop wanted its product to stand out in a sea of generic looking designs, which was its motivation in arriving at its distinctive look.  (Kurtz Dep., 151:3-152:11.)  The intervening seven years of exclusive use then gave it rights protectable against copiers like Valley View.

That Valley View's copying is strong evidence of secondary meaning becomes clear when its true motivations are understood.  Contrary to the tale of creation set forth in its brief, the emails it produced establish the real story.  ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.  The documentary record is replete with repeated reports ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

Then, to top off this significant market feedback, a major potential customer, Uni-Lok, approached Valley View and asked Valley View to make the B.E.A.S.T. for it.  (Rynberk Dep., 96:6-14.)  Valley View asserts that a product "similar" to the B.E.A.S.T. was requested, as if Uni-Lok merely wanted similar qualities as provided by the B.E.A.S.T. ████████████████████████████████ ████████████████████████████████████████████████████████████████████████

10

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████. The resulting product speaks volumes, as do the drawings created by Valley View when it was copying the B.E.A.S.T. (Walters Dec., Ex. E.) Valley View did not deliver a product that had similar qualities and functionality as the B.E.A.S.T., Valley View knocked-off the B.E.A.S.T. to trade off its good will. (Walters Dec., Ex. G, *see e.g.,* VVW001127.)

Valley View's copying and its clear motives in copying constitute strong evidence that the marketplace has accepted the BrickStop design as a hallmark of quality and therefore the trade dress enjoys secondary meaning that this Court should protect. Intentional copying demonstrates that acquired distinctiveness exists. *Sara Lee Corp.*, 1998 WL 433764, at *13. Absent acquired distinctiveness, no logical reason exists for Valley View to copy BrickStop's design, which is not required for any functionality and is otherwise unused by others in the industry.

### 4. The Evidence of Actual Confusion Demonstrates Secondary Meaning.

The record now demonstrates that significant instances of actual confusion have arisen, despite the very short time that the two products have been in competition. It is well established that actual confusion demonstrates the existence of secondary meaning in the mark. *Tools USA*, 87 F.3d at 660 ("Evidence offered as to actual customer confusion, although also probative of likelihood of confusion, certainly tends to show that the relevant purchasing public associated [the asserted trade dress] with Tools USA"). "To establish secondary meaning it is not necessary for the public to be aware of the name of the manufacturer from which a product emanates. It is sufficient if the public is aware that the product comes from a single, though anonymous, source." *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 380 (7th Cir. 1976). Thus, the actual confusion discussed below is strong evidence of secondary meaning.

### C. There Is A Strong Likelihood of Confusion if Valley View Is Not Enjoined From Selling Its "Knock-off" Product.

#### 1. The Identical Area and Manner of Concurrent Use Favors a Finding of Likelihood of Confusion.

Each of the factors this Court should weigh in determining whether BrickStop has demonstrated that there is a likelihood of confusion tip sharply in favor of finding confusion will result from Valley View's actions. This first factor "assesses whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g., Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) (internal quotation omitted). In this instance, Valley View does not dispute in its

opposition that BrickStop and Valley View use nearly identical types of advertising and trade channels. Both BrickStop and Valley view advertise at the same trade shows, and target identical customers. Both companies sell directly to wholesalers and/or resellers who then sell to contractors and installers. Valley View has already directly approached multiple BrickStop customers. Moreover, the trade dress at issue is used in precisely the same manner on the paver edging products. These undisputed facts alone indicate that this factor favors a finding of likelihood of confusion. *CAE*, 267 F.3d at 682; *Logan Graphic Prods., Inc. v. Textus USA, Inc.*, No. 02-cv-1823, 2002 WL 31870549, at *6 (N.D. Ill. Dec. 23, 2002).

### 2. The Incidences of Actual Confusion to Date Strongly Counsel for a Finding of Likelihood of Confusion.

The actual confusion of record includes the testimony of Eric Ashenbrenner, who has personally sold over 50,000 feet of the B.E.A.S.T., and who, when confronted with a sample of the Diamond Paver Edge, did not notice any distinctions from the B.E.A.S.T. Ashenbrenner believed it was in fact the B.E.A.S.T. He concluded that BrickStop and Valley View were sourcing the product from the same manufacturer. (D.N. 21, ¶¶ 1-5.) While Valley View asserts Ashenbrenner was not confused as to the source of the product, only the manufacturer, there is no distinction. Ashenbrenner upon viewing Valley View's product sample concluded that BrickStop and Valley View were actually sourcing the same product from a single manufacturer. Thus, an individual well familiar with the product and industry became immediately confused as to who the source of the B.E.A.S.T. was because of the existence of Valley View's product. Similarly, a manager at a wholesaler that historically has carried BrickStop's product, when confronted with the Diamond Paver Edge image on a website, said the product must be being sold by Valley View with the permission of BrickStop. (D.N. 13, Wein Dec., ¶ 9.)[3]

Most significantly, discovery of Valley View has revealed evidence of confusion amongst ultimate consumers, the contractors and installers. Valley View attends trade shows to display its products including the Diamond Paver Edge. Contractors and installers also attend these trade shows. Valley View's booth is well marked with its name. Despite this marking, at least half a dozen contractors have approached Valley View's Mr. Bertucci and asked him whether the Diamond Paver Edge product he was displaying at the Valley View booth was the B.E.A.S.T. (Walters Dec., Ex. K, Bertucci Dep., 142:14-143:11.) No clearer evidence could demonstrate that contractors look for the shape of the product to identify it, have become confused as to the source of this product, and will ignore even prominent

---

[3]Valley View seeks to strike this evidence as hearsay, which BrickStop will address in its opposition to the motion to strike.

labeling when confronted with that unique shape.  This factor weighs heavily in favor of a finding of likelihood of confusion.

### 3. The Relatively Inexpensive Nature of the Product and Reliance on Shape by Contractors Demonstrates the Degree of Customer Care in the Purchase Favors Finding Likelihood of Confusion.

BrickStop set forth the appropriate standards in its opening brief regarding this factor.  (D.N. 13, pp. 10-12.)  Valley View responds by citing inapposite case law and asserting its labeling will prevent confusion.  Of course, as demonstrated above, labeling has no real world affect when contractors can walk up to a prominently marked Valley View booth at a trade show and ask if the Diamond Paver Edge is the B.E.A.S.T.  How much more so when the contractor goes to a brick yard with the materials being sold off of a pallet and the only label is the subtle stamp in the product which is of the same material and color as the entire eight foot strip of edging?

The Court must analyze the respective trade dresses in view of what happens in the marketplace.  *Thomas II*, 138 F.3d at 296.  In this respect, Valley View identifies its raised lettering stamped into the material to identify the source of the Diamond Paver Edge as a Valley View product.  However, Valley View's raised lettering is akin to *Thomas II* where the Seventh Circuit noted that "each company embosses its name on the ties in the same color as the rest of the tie, rendering the name difficult to see." *Id.*  Moreover, the small white labels that Valley View refers to in its brief are only affixed to its *samples* sent to distributors and are *not* found on the product when it is sold to end customers.  Furthermore, the fact that Valley View utilized nearly identical sales literature that depicted the B.E.A.S.T. on it supports a finding of likelihood of confusion.  (D.N. 13, Wein Dec., Exs. A and B.)  Thus, it is disingenuous for Valley View to contend that Valley View's labeling and marketing of its product precludes a likelihood of confusion.

The cases Valley View relies on for the proposition that clear product labeling and marketing of products prevents a likelihood of confusion are inapposite to the facts of this case.  In *Dorr-Oliver* the products cost $40,000 each and could only be sold to a potential marketplace of 12 sophisticated customers who purchased the goods after extensive negotiations.  *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 378, 381 (7th Cir. 1996).  Likewise, in *Versa Products* the safety control valves at issue were sold by reference to technical specifications, not by sight, to sophisticated consumers who select the products carefully to safeguard human life and huge possible property losses.  *Versa Prods Co. v. Bifold Co. Mfg. Ltd.*, 50 F.3d 189, 213-14 (3rd Cir. 1995).  In fact, the Third Circuit stated "this is not a case where the items are relatively inexpensive and consumers cannot be expected to examine the labels carefully."  *Id.* at 213 (internal quotation omitted).  Thus, *Versa* distinguishes itself from the facts

13

of this case where the products cost under $2.00 per foot and are sold to contractors who, once having decided they like the way a product works, subsequently will look for the shape on a brickyard to select it and can hardly be expected to examine it for labels before purchasing. (Martinet Dec., ¶ 26; D.N. 13, Train Dec., ¶ 3; Brown Dec., ¶ 7.)

### 4.    BrickStop's Strong Trade Dress Indicates Confusion is Likely.

A particular trade dress's strength flows from is distinctiveness, "meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. Long use of a mark or trade dress coupled with substantial sales and advertising expenditures indicates it is strong. *Id.* BrickStop's signature design is well known in the industry. (D.N. 13, Train Dec., ¶ 4.) This conclusion is undeniable when considering BrickStop's sales of over 34 million feet of product featuring the signature design, which accounts for over 60% of BrickStop's business. (D.N. 13, Frieberg Dec., ¶ 13.) Moreover, as shown in Exhibits D to K of the Frieberg Dec., BrickStop is the only paver edge company to incorporate a distinctive ornamental design into its product and BrickStop is unaware of any other competitive product in the marketplace that does so. (D.N. 13, Frieberg Dec., ¶ 9.) Thus, in a sea of generic product configurations, BrickStop's signature design is unequivocally strong in the industry. Thus, this factor favors a finding of a likelihood of confusion.

### 5.    Taken Together, the Likelihood of Confusion Factors Weigh Strongly in Favor of Finding Confusion Likely.

Weighing the foregoing factors indicates a likelihood of confusion between the trade dresses is imminent. BrickStop and Valley View market identical types of products with the same trade dress to the same target customers through the same trade channels. The products are so close in form that even consumers exercising a high degree of care when purchasing will not notice a difference. Despite the very recent introduction of Valley View's knock-off, eight instances of actual confusion have already come to light, engendered in distributors having a long familiarity with BrickStop's product, and in contractors seeing Valley View's product on display. This strongly militates in favor of a finding of likelihood of confusion. Thus, all of the factors identified as most important in balancing likelihood of confusion by the Seventh Circuit, similarity of the trade dress, Valley View's intent, and evidence of actual confusion, weigh heavily in favor of a finding of likelihood of confusion. Balancing all the factors leads to the inescapable conclusion that there is a strong likelihood that Valley View's adoption of the BrickStop design for its Diamond Paver Edge will cause actionable confusion in the marketplace.

### D.    Irreparable Harm, Balancing the Harms, and the Public Interest.

BrickStop set forth the standards for presuming irreparable harm in its opening papers. Given the

strong showing of likelihood of confusion and success on the merits, this Court should presume irreparable harm will occur absent an injunction.  Significantly, the danger from loss of control of its trade dress is magnified because Valley View is using a different injection molding process than BrickStop, low pressure injection molding.  Mr. Rotheiser explains in his report that the process of low pressure molding creates a product that simultaneously is "both weaker and stiffer than the B.E.A.S.T. - therefore more likely to fail in bending to suit a curved paving configuration."  This only confirms Mr. Hutchinson's original testimony that the low pressure product "is more likely to create product that will fail during installation."  (D.N. 13, Hutchinson Dec., ¶ 11.) ███████████████████████████████

███████████████████████████████████████████████████████████████████████

If relevant consumers associate the BrickStop shaped foot as inferior because of Valley View's entry, such reputational harm would be difficult to detect and overcome in the marketplace.  Moreover, absent an injunction prohibiting Valley View from advertising and selling its Diamond Paver Edge product, BrickStop has and will continue to face price erosion and lost customers.  (D.N. 13, Brown Dec., ¶¶ 7-10; Frieberg Dec., ¶ 20.)  Additionally, the substantial likelihood of confusion will result in incalculable lost sales, and both the price erosion and customer loss are likely irreversible.  (D.N. 13, Frieberg Dec., ¶ 20.)  Such harms have been recognized by this Court as being irreparable.  *Chamberlain Group, Inc. v. Lear Corp.*, No. 05-cv-3449, 2007 WL 1017741, at * 6 (N.D. Ill. Mar. 30, 2007).

BrickStop fully addressed the balancing of the harms and the public interest in its opening brief and will not repeat that argument here.

## III.  Conclusion

For all of the foregoing reasons BrickStop respectfully requests that the Court grant BrickStop's Motion for Preliminary Injunction.

Respectfully Submitted,

Date: <u>August 22, 2008</u>

Mark Hellmann
Hellmann Law Group
2 North LaSalle Street, Suite 1808
Chicago, Illinois 60602
Tel.  312-580-9070
Fax   847-556-0031
mark@hellmann.com

  s/Scott R. Brown                          
Scott R. Brown (Admitted *Pro Hac Vice*)
Matthew B. Walters (Admitted *Pro Hac Vice*)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel.  913-647-9050
Fax  913-647-9057
srb@hoveywilliams.com
mbw@hoveywilliams.com

ATTORNEYS FOR PLAINTIFF
BRICKSTOP CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2008, the foregoing was hand delivered to the Clerk of the Court, and a copy was electronically mailed to the following:

Monica L. Thompson          monica.thompson@dlapiper.com
Richard Blake Johnston      blake.johnston@dlapiper.com
DLA Piper US LLP IL
203 North LaSalle Street
20th Floor
Chicago, IL 60601
(312) 368-4000

ATTORNEYS FOR DEFENDANT
VALLEY VIEW INDUSTRIES, H.C., INC.

s/Scott R. Brown

# Appendix A

# Appendix A



**Digital Image of the B.E.A.S.T.**



**Excerpt of Exhibit F to the Expert Report of Jordan I. Rotheiser**

# The Rotheiser design performs all of the functions identified by Valley View for the B.E.A.S.T.